Please be seated. Next case please. 12-1401 Angel S. Murd. The attorneys who are going to argue, please step up to the podium and introduce yourselves. Mark Filangi on behalf of Appellants. Brad Greisen on behalf of the Defendants. Both sides will have 15 minutes to orally argue. Appellant, reserve from your 15 minutes that portion that you want to use for rebuttal. Thank you. Appellant, you may proceed. Great, thank you. Good morning, Justices. Again, Mark Filangi on behalf of Appellants. Just for sake of clarity, I think it's important that I identify the counts at issue in this appeal and the counts that are not at issue. Count 1 of the plaintiff's complaint, which saw a TRO is not at issue, as well as Count 4, which is a breach of fiduciary duty, as against the board related to Alex Lothan is also not at issue. The rest of the counts of complaint are at issue in this appeal. This is a case of smoke and mirrors. The facts are not in dispute. It's a question of law and whether there was a violation of the 1957 BCA by the Defendants in this case. Specifically, it's important to note that the character of Dan Maru, a former plaintiff in this case, is not at issue. We admit that he was the former business partner of Tony Resco. We admit he pled guilty to a crime in federal court. But we state with certainty he's not at issue in this case. This case proceeded after his dismissal. The case went on and the court found that the remaining plaintiffs had standing to bring the case as heirs of Joseph and Maru. So it's important that we note that Dan Maru is not here. He's not part of this case. It's his children who have proper standing to bring the claims, and they have. Going back to the facts, which are not in dispute, from the 1960s through 1982, the company followed the proper procedure that we state under the BCA at issue 1957 relating to the issuance of options. Specifically, the process that was followed was a special board meeting, and at that special board meeting, the board voted and approved the issuance of options to certain insiders. Subsequent to that meeting, there would be financial statements prepared identifying that as well as notice to shareholders of a shareholder meeting, and the issuance by the board of those options was specifically identified to the shareholders. At the shareholder meeting, there was discussion, there was a motion, a second, and approval by two-thirds, which is required under the 1957 BCA for the issuance of those options. That process was followed all the way through 1982. Subsequent to that, starting in 1983, that process was not followed. At that time, it's important to note Joe Maru was no longer on the board of directors. Joe Maru had been removed at that time. Subsequent to 1982, the process changed dramatically. How did that process change? Well, the board would have a special meeting, and at that special meeting, the issuance of the options would be decided and voted on. But instead of giving notice to shareholders, what would take place would be the preparation of financial statements, which I have a sample here, which is included in the Record on Appeal. It's important to note. What was this, an annual meeting of shareholders? Correct. It was an annual meeting. So is a general notice enough? Need they specify with express specificity what you're discussing? That's our position, absolutely, and we think the Jones case says that. What's the authority on that? The Jones case, Your Honor. If I could grab the Jones case. The Jones case, which is cited in our brief, and it's 297 ILAB 513, on page 120 specifically states, and this was an issuance of what was specific and sufficient notice to shareholders. It says, where a notice to stockholders sufficiently prizes them of the matters to be considered at the meeting, gives them information upon which they may exercise an intelligent judgment with reference to the proposed questions, and opens up the avenues for such additional information as stockholders may desire to obtain, that is sufficient. In the Jones case, they found that the notice was sufficient because it had specific language as to the issues to be presented at the shareholder meeting. And our position is subsequent to 1982, the notice to shareholders contained nothing. There was no notice. It was a general notice of a meeting. Nothing more. In contrast to the prior years, which specifically identified to the shareholders the board's issuance of these options. And so, as the Jones case says, sufficient notice is required. In our case, we have no notice. No notice. The defense rely on the fact that the financial statements attached to the notice to the shareholders of the meeting was sufficient notice. But if you look at the specific financial statements, an example is A360, if you have to turn to the notes, and the notes to the consolidated financial statements, for example, in A360 and note 5 stock options, doesn't identify who they were issued to. It gives no specific information. It just says stock options were issued. That's not sufficient to put the shareholders on notice, over 100 shareholders on notice. Counsel, isn't the lack of notice cured if there's no shareholder objection at the meeting? But if you go to the meeting and this issue isn't discussed whatsoever, it's not brought to a vote, it's not discussed, how can there be sufficient notice when it's not even discussed at the meeting? Wouldn't the shareholder have some sort of obligation to make sure it was in the minutes of the next meeting? The shareholders had no knowledge that this was an issue that was going to be at the shareholder's meeting, nor at the shareholder meeting was this even brought up or discussed or voted on. So, it never, ever appears. The defendants rely on a general ratification to say that that general ratification of the board's actions in the prior year is sufficient to approve the issuance of options. We contest that position and we state and we believe that the BCA, absolutely it's illogical for the BCA to stand for the proposition that the dilution of a shareholder's interest can be approved without notice, knowledge, and a general ratification. And that's exactly what happened. The shareholders had no knowledge and the defendants take the position that, well, they attended the meetings. That's a waiver. They're there at the meeting. But if they're at the meeting and this issuance of options is never discussed, never voted on, how could there be a waiver of something they have no knowledge of? Does the Illinois Business Corporation Act require that the purpose of the meeting be in the notice? The Illinois Business Corporation Act only requires that the date, time, and place of the meeting be in the notice. But when we go back to the 1957 BCA and the preemptive rights that these shareholders have, which require a two-thirds approval, requires that there be a vote on the issue of the issuance of options, which did not take place. They had no knowledge. It's a general ratification. This is a defendant's backdoor ability to issue options to insiders without specific knowledge to anyone and then rely on a general ratification as their so-called approval of their conduct. And we contest that position and state that that can't be the case. That can't be the case where a dilution of a property interest, shares in a company, without notice or knowledge, is okay with a general ratification at a subsequent shareholder meeting. Defendants rely on the waiver, latches, estoppel, which all basically tie into the same thing, which is going back to our same position, that none of those apply when there's no actual knowledge of the issues to be presented to the shareholders at the meeting. And it begs the question, why from 1960 to 1982 did they do the process right, where they gave notice specifically in a letter in advance of the issuance of the options, presented it to the shareholders for a vote. It was motioned, seconded, and approved in a proper process. Suddenly they do an about-face in 1983 and no longer do that when Joe Maru is not on the board. Defendants also, we contest and raise the major issue on the Dead Man's Act. The Dead Man's Act, we believe the trial court erred in not applying. If you review the statement of facts in the appellee's brief, the entire statement of facts is Joe Maru knew, Joe Maru did, Joe Maru said. That's the very issue that's put in the Gunn case as well as the Coleman case that says you can't do that. When errors The Dead Man's Act. Yes. That would only apply, wouldn't it, if your plaintiffs here were in fact the persons involved with the deceased? In other words, shouldn't the complaining party here be truly representative of the deceased here? They were representing themselves. They were going under their own basis. It was their cause of action. And they were not acting in a representative capacity. I disagree with you, Your Honor. Executive or administrator? That's not true, Your Honor, because the very definitions in the Dead Man's Act said that's not the case, that the Act allows a representative of a deceased person, and the definition of representative is defined as any executive or administrator, heir or legacy of a deceased person. In this case, it's an heir of a deceased person. In fact, two, Joseph and Gertrude. Well, if you take that argument to its logical conclusion, you could preclude anything because ultimately we're all heirs of long-past former family members or whatever. I mean, where does it end? I think what Justice Harris is saying is that they're not bringing this cause of action in a representative capacity. They're bringing it as owners of these shares of stock. And I think the Coleman case is instructive. The Coleman case, which is 291 ALAB 3rd 670, if you look at page 691, this case relates to the heir of a deceased suing on a note, the note being in default, the note being between the deceased and someone else, the heir receiving those rights suing on the note. I want to direct your attention to the quote here. However, based on the clear language of the statute, the Dead Man's Act is not restricted to probate actions filed on behalf of an estate or decedent. It applies to any action in which the representative of the deceased person sues or defends. In this case, they got their stock pursuant to the deceased, Joseph and Gertrude. And they're suing on behalf of themselves, but pursuant to the stock that they got as an heir for the time period for which 1982 to 1999 for which Joseph and Gertrude were alive and owners of that stock. So they're suing in the capacity of an heir for the period of time for which Joseph and Gertrude who were deceased cannot bring that action. Thank you. Okay, you'll have five minutes, sir, for rebuttal. Thank you. Appellee. Good morning. Brad Grayson again on behalf of the defendants' appellees. This court should affirm the decision to grant summary judgment. It should, however, reverse the denial of sanctions in this case. As counsel explained, this case involves the plaintiff's challenges to certain stock options that were awarded to key employees of Apex Investment Associates in lieu of other compensation. The stock options were awarded before the plaintiffs even were shareholders in the company. The Apex Board of Directors unanimously approved these stock options at meetings between 1983 and 1999. And incidentally, the evidence shows that Joe Maru was a director in 1983 when some of these, the minutes reflect that he participated in the meeting in 1983 when some of these stock options were granted. Thereafter, at annual shareholder meetings, which were scheduled with appropriate and proper notice under the BCA, the shareholders ratified and approved the actions of the Board of Directors for the prior year, which included the grant of the stock options. At those shareholders' meetings, it should be noted, it's not disputed, the minutes of the board meetings were there. Anyone, any of the shareholders could have reviewed them and seen what the Board of Directors did in the prior year, including unanimously adopt these stock options that are now being challenged. Several witnesses in this case have testified as to what happened at the board meetings and what happened at the shareholder meetings and testified, in fact, about Joe Maru asking questions about all of this stuff and approving the stock options at various points in time. As counsel said, there's no dispute about the facts in this case. None of the facts are challenged. There's absolutely no contrary evidence of any kind. In fact, the plaintiffs in their depositions admitted they don't have any personal knowledge of any of this. They don't have any personal knowledge of what went on, how these things were approved, why they were approved. The undisputed facts establish that there was proper and appropriate notice of the directors' meetings, of the shareholders' meetings, that there was proper approval of these stock options. In fact, Joe Maru and Gertrude Maru, from whom the plaintiffs inherited their stock, approved the stock options when they were shareholders or when they were on the Board of Directors. Do you think there is anything that would suddenly raise a possibility of impropriety when there's been a systemic following for 27 years of a particular notice, and then all of a sudden, under circumstances, there suddenly isn't the same notice? I don't think that that in and of itself means that the changed notice or the different notice of meetings is improper. In the BCA, it clearly sets up what proper notice is and what required notice is of meetings, and that was complied with. In fact, in the BCA, for certain types of corporate actions, there is a higher threshold of notice required. If there's a special shareholders' meeting, it requires notice of the action that's to be taken. If there's a proposed merger, if there's a proposed sale of the business, there is a higher threshold of notice that's required. So the legislature could have required a higher level of shareholders' meetings and didn't. And so the fact that perhaps there was extra or different notice that was given in the past doesn't make the notice that was given in this case inadequate. There was full compliance with the law. The only case that they've really cited that discusses that a general ratification might not have been adequate in a certain circumstance is the Kornfeld case. But in that case, there was clear evidence of active concealment of the unauthorized act by officers to approve guarantees on behalf of the corporation. There's nothing like that here. In fact, in that case, there was evidence that the officers even recognized they might lose their jobs if the directors found out what they did. Here, quite to the contrary, there was ample opportunity for shareholders to see that the options were approved. There were minutes of the board meetings that were available to them. These stock options were disclosed in financial statements that were disseminated. There's no dispute about any of that. So there's no active concealment here. And there was full compliance with the statutory requirements for notice. As to the issue of the Dead Man's Act, the Dead Man's Act is to protect decedents' estates from fraudulent claims and bars evidence the decedent could have refuted in matters involving a representative of the decedent or estate. There is no issue here involving the decedent's estate or the plaintiff's rights to claim in this case as a representative of the decedent or the estate. They're simply proceeding on their own to file a claim claiming there was impropriety with respect to matters of the corporation involving their status as shareholders, not their status as heirs or legatees of the estate. In fact, there's no dispute at all in this case concerning the ownership of their shares. So quite simply, the purposes of the Dead Man's Act are not invoked here. And the Coleman case to which counsel referred talked about the situation where the representative sues to protect the interests of the estate and to protect their rights and status as heirs and legatees. Nothing of the kind is at issue in this case. This case is simply a shareholder action and it only invokes a question of whether these stock options were properly approved. As to the proper approval, the appellants here are claiming that the options were issued without required two-thirds approval in the meetings. Is there any facts to justify that statement? No, there's not. Or was it in fact approved by at least two-thirds? It was. The actions in every one of the shareholder votes was approved by well over two-thirds of the shareholders. The votes were 90 percent, 85 percent of the shareholders ratified the prior year's actions of the Board of Directors in approving the stock options. They had all the information at their disposal in terms of minutes of board meetings. They could have gone through the minutes and looked for themselves to see what actions they were approving before they voted to approve it. And they ratified the actions of the Board of Directors by well over two-thirds in every case. We've laid out the exact percentages for each of the shareholder votes concerning the stock options. Essentially in this case, and it's the reason why we believe sanctions are appropriate in this case, there's no good faith basis for their claims. You have to basically assume in this case that there are different requirements for notices than the BCA requires. There's no case law that supports their position. There's nothing that they've cited that says that a Is that an abuse of discretion standard? It is. Okay, so to buy your argument, we're going to have to find that the court abused its discretion. Yes, that is correct. It's a rather high standard. It is a high standard. Tell me how you meet it. Well, the way we read it is there's absolutely no evidence whatsoever here to support their claims. There's no basis for them saying there was inadequate notice. There's no basis for them to say that it wasn't approved by a proper percentage of shareholders in this case. There is no evidence of, you know, when they cite cases talking about active concealment of what the directors did, there's no evidence of that kind in the case. In fact, they admitted during depositions in the case they had no knowledge really of what went on in this case, and they continued to proceed with the case after all of the evidence clearly showed that statutory requirements were met, proper notices were given, there was proper approval of all of these things. Indeed, you know, their grandfather and their stack approved these things and voted to approve them. Joe Maru was on the board for several years, including in 1983. He was the accountant for the company. There's a lot of testimony about him going through all of this stuff in detail. And so there really was no basis for these claims. They brought TRO proceedings without any basis. They lost. They continued to a preliminary injunction hearing in bad faith. Only after everyone prepared for the preliminary injunction hearing did they just withdraw it. But they still went on and proceeded with their case, admitting in depositions that some of their allegations were untrue. For example, that they didn't have access to financial statements until 2009, when in fact they had access to financial statements earlier. They also admitted that they had no evidence to contradict all of the, what they now concede is undisputed evidence of how these stock options were approved. And they can't point to anything in the BCA that indicates that this notice was improper. So, you know, for all of those reasons, not only do we believe the decision to affirm summary, the decision to grant summary judgment should be affirmed, but it should have been sanctioned should have been granted and it was an abuse of discretion not to grant them. I have one question. Assume the Mayhews voted against these grants. Would that have changed the two-thirds vote? I don't believe it would, no. I don't think they owned a sufficient amount that it would have made a material difference. So, in the best case, even had they known and were vehemently against it and voted every one of their shares against the board's actions, it wouldn't have made any difference? Right, there still would have been two-thirds approval because, you know, they had a smaller percentage and their vote wouldn't have swung things. It simply makes it, in our mind, worse that they sued for actions that took place when they weren't even shareholders in the company that were actually, you know, they inherited their shares from someone who actually approved these actions and then without any good faith basis went ahead and pursued their claims after they were given all the corporate records to show that proper notices were sent out of meetings and that the votes overwhelmingly favored approval of the director actions to award the stock options. Is there any restriction in the law or case law that informs a shareholder of how far back they can go and make complaint? Like a statute of limitations, is there any provision in the BCA that says, you know, after X number of years, it's over? Yeah, we didn't proceed on that basis and I can't answer the question. We are talking about a case, and I think it's telling that we're talking about a case that was filed in 2010 by people who weren't even shareholders in this period from 1983 to 1999 when all of this took place, had no knowledge of what, admittedly had no knowledge of what took place and nonetheless proceeded, we believe, in bad faith to file claims that had no basis in law. In fact, and then their main argument, it's the first argument they make in their, you know, brief, is that the evidence should be excluded of what took place simply because their grandfather is no longer around to refute it. And they make that argument obviously under the Dead Man's Act, but the Dead Man's Act, all of the cases that interpret the Dead Man's Act talk about it protecting fraudulent claims against the estate or protecting rights of legatees or heirs in their inheritance, and that's not an issue. That's not an issue here. No one is disputing that they inherited their shares of stock from their grandfather and then through their father. This is a question where they're bringing shareholder claims. So for all of those reasons, we believe the decision of the case should be affirmed and the decision to deny sanctions should be reversed. Thank you, sir. Thank you. Regarding the merits of the case, I'll point you to, in the Record of Appeal, A-676, the law firm Rzhevsky and Frelick and Mr. Anthony Wakata did an extensive investigation prior to the filing of the suit and actually sent a demand letter based on the review of all the corporate records that was done prior to the suit. We stand our position and stand before you today with the position that this is a meritorious case and that the BCA was violated. To go to Judge Pierce's comments earlier with counsel regarding what would have happened if they had voted against it, it's entirely speculative because none of the shareholders got notice and none of the shareholders had the ability to vote yes or no. We don't know what would have happened. We've sued derivatively on behalf of the individuals and the company, separate accounts, to raise this issue because the shareholders did not get the opportunity to get notice, to have full notice. They would have had notice if they would have looked at the financial statement, right? Incorrect. The financial statement as I pointed out earlier and I gave a reference in the Record of Appeal does not specifically state who they were issued to. It gives no, it's very vague. It's a great, they talk about active concealment, counsel brought that up, the position is there's absolutely active concealment. We have a process where special meetings of board of directors are held. We have a period of time, many years, where there's a process followed where all the shareholders get specific notice that options are being granted. Suddenly it's changed with no notice or opportunity for shareholders to know that the process has changed. The board has these special meetings where they issue options. The options then are not disclosed except in a footnote to a financial statement, which is, it's vague and it's confusing even when you read it. Then they have a shareholder meeting where there's a general ratification. Counsel keeps saying the options, they're all approved. They're approved by the shareholders. There's not specific and sufficient notice that there's options that were issued that the shareholders are going to be voting on. That's our issue. The issue is the notice is not sufficient. The Jones case says sufficient notice. In this case we have no notice. Zero notice to the shareholders that when they issue the general ratification that they're ratifying the issuance of these options. There's no notice. And we believe under the BCA that this is improper notice and that the two-thirds vote did not take place because a general ratification is not sufficient to dilute somebody's property interest. Thank you. Thank you. The court will take the case under advisement.